

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2003

# USA v. Armstrong

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2036

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Armstrong" (2003). *2003 Decisions.* Paper 494.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/494

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2036

UNITED STATES OF AMERICA

v.

MICHAEL ARMSTRONG,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 99-cr-00603
(Honorable James McGirr Kelly)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 25, 2003

Before: BECKER, <u>Chief</u> <u>Judge</u>*, and SCIRICA**, <u>Circuit</u> <u>Judges</u>,
and SHADUR, <u>District</u> <u>Judge</u>***

(Filed: May 29, 2003)

---

*Judge Becker completed his term as Chief Judge on May 4, 2003.

**Judge Scirica succeeded to the position of Chief Judge on May 4, 2003.

***The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

## OPINION OF THE COURT

SCIRICA, <u>Chief</u> <u>Judge</u>.

A jury found Michael Armstrong guilty of conspiracy to possess with intent to distribute cocaine and cocaine base, possession with intent to distribute cocaine and cocaine base, and attempted possession and distribution of cocaine and cocaine base.[1] Armstrong raises six issues on appeal, the most salient of which is that the District Court erred in denying his motion to suppress his statements and evidence obtained after his arrest on the ground that the arresting officers lacked probable cause.[2]

## I.

In 1997, Armstrong approached Terry W. Dillard to join his enterprise of dealing cocaine in Philadelphia. Dillard initially refused but eventually agreed and located a cocaine source in California. Under their agreement, Dillard purchased the cocaine in California and shipped it via United States Express mail to either his own or Armstrong's Philadelphia address. When a shipment was sent to Dillard's, he would telephone Armstrong to pick up the cocaine for resale in Philadelphia.[3] Armstrong was to remit to

---

[1] 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[3] Armstrong did all the reselling. Dillard did not know any prospective purchasers in Philadelphia.

Dillard $20,000 per kilogram and retain as profit the difference between that and the selling price.

On August 12, 1999, United States postal inspectors intercepted and obtained search warrants for packages mailed by Dillard. Each package contained approximately one kilogram of cocaine. Inspectors removed the cocaine, replaced it with a sham substance, inserted a remote alarm to go off when the package was opened, and arranged for a controlled delivery to Dillard's address.

On August 13, 1999, an undercover postal inspector delivered the package to Dillard's home. Seven minutes later, Armstrong arrived and went inside. After twenty minutes the package was opened, sounding the alarm. Postal inspectors entered the residence and found both Armstrong and Dillard on the second floor together with the opened package. They were arrested and Armstrong was found with $7,410 during a search incidental to his arrest.

Armstrong was taken to the postal inspectors' office where he was read his rights and given a written list of rights with a waiver form. After executing the waiver Armstrong said that on August 13, 1999, he went to Dillard's house to purchase cocaine and went upstairs to open the package of cocaine. He stated that for a few months he and Dillard had been selling cocaine, most recently in kilogram form that Dillard purchased in California. He also said he picked up fifteen ounces of cocaine from Dillard the week before and sold it in Philadelphia.

3

Consistent with these admissions, express mail labels showed deliveries to Dillard's address on August 6, 1999 and July 23, 1999. Additional single deliveries were made to Dillard's address on June 30, July 8, and July 16, and to Armstrong's address on July 15, 1999. Telephone records of Dillard's telephone in California and Armstrong's cellular telephone indicated several calls between the two. Based on this evidence, the government charged Armstrong with drug violations. Armstrong initially agreed to cooperate with the government, but later renounced his plea agreement and proceeded to trial.

Prior to trial, Armstrong filed a motion to suppress money seized incidental to his arrest and certain admissions he made to postal inspectors regarding his role in the cocaine distribution scheme. The District Court denied the suppression motion, stating:

> I believe there was probable cause. You have a known delivery of drugs in a sealed package that has an alarm of some kind and shortly after the package is delivered to this residence, Mr. Armstrong shows up and then, there is a period of time and we'll say the package is opened or at least the alarm is sounded and that's when the police move in. He is upstairs with the known drug dealer, a[nd] an officer said, "within arm's length" of an opened package and the idea he was visiting with a friend does not add up and I think they had probable cause and therefore, I am not going to suppress the statement obtained by the postal inspectors.

After a four-day trial, Armstrong was convicted on all counts. The District Court sentenced him to 300 months imprisonment, ten years supervised release, a $5,000 fine, and a $100 special assessment. At the sentencing hearing, the District Court found Armstrong was an organizer or leader of the cocaine conspiracy and was subject to a two-

4

point enhancement in his base offense level under U.S.S.G. § 3B1.1(c). The court also imposed a two-point obstruction of justice enhancement under U.S.S.G. § 3C1.1 for testifying falsely at the suppression hearing when he denied under oath that he signed a waiver of his rights. This appeal followed.

## II.

Armstrong contends the District Court erred in denying his motion to suppress because there was no probable cause for his arrest. We review factual findings for clear error and questions of law de novo. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

The record of the suppression hearing shows the postal inspectors had probable cause to arrest Armstrong.[4] Surveillance photographs showed Dillard mailing packages to his own address the day before he and Armstrong were arrested. Examining those packages, inspectors found two kilograms of cocaine and one ounce of crack. On the day of his arrest, Armstrong arrived at Dillard's residence seven minutes after the controlled delivery of one of the packages. The package was opened while Armstrong was in Dillard's home. Entering the home, inspectors found Armstrong upstairs in close proximity to Dillard and the open package. These facts led the inspectors to reasonably

---

[4]There is probable cause to arrest if, at the moment the arrest is made, the facts and circumstances within an officer's knowledge, and reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964).

believe Armstrong was there to obtain drugs. Certainly, there was probable cause to arrest Armstrong and seize the incriminating evidence.

## III.

Armstrong also contends the District Court erred in denying his Batson challenge to the government's peremptory strikes of two African-American jurors. Batson v. Kentucky, 476 U.S. 79 (1986). But the government offered race-neutral reasons for striking the jurors: the first juror slept through much of the voir dire and was unmarried; and the second juror's uncle and cousin had been charged with drug trafficking. The District Court properly rejected Armstrong's challenge.

## IV.

Armstrong argues for the first time that his convictions should be vacated because of alleged prosecutorial use of false testimony. Armstrong contends there were inconsistencies in Inspector Thomas Henderson's grand jury testimony and suppression hearing testimony. In his grand jury testimony, Henderson testified that Armstrong and Dillard were found in the upstairs bedroom with the open package of cocaine.[5] At the suppression hearing, he testified that he first saw Armstrong when he was brought downstairs with Dillard.[6] These statements are not necessarily inconsistent, much less

---

[5]Before the grand jury, Henderson was asked, "Where did you find Michael Armstrong?" Henderson replied, "Mike Armstrong was upstairs, they were all upstairs in the bedroom and that's where the package was found to be in the open condition."

[6]At the suppression hearing, Henderson was asked, "Where did you first see the
(continued...)

6

false.  The grand jury testimony refers to where postal inspectors found Armstrong and the suppression testimony refers to when Henderson first saw Armstrong.  We see no error.

## V.

Armstrong contends he was not permitted to cross-examine Inspector Henderson about the location of the cocaine and his proximity to it.  But the record shows that Armstrong cross-examined Henderson on both issues.  The cross-examination was neither objected to by the government nor restricted by the District Court.  The District Court refused Armstrong's request to recall Henderson a second time to present redundant and cumulative testimony regarding the location of the package.  We see no error.

## VI.

Armstrong argues the District Court erred when it increased his offense level under U.S.S.G. § 3B1.1(c) because he was an organizer or leader of the cocaine conspiracy.  But the record supports the finding that Armstrong organized and led the conspiracy.  Armstrong decided who would purchase the cocaine and what price to charge.  He recruited Dillard, handled the proceeds and drugs in all of the transactions, told Dillard when to increase the quantity of cocaine, and had virtually complete control over the customer end of the transactions.  We see no error.

---

[6](...continued)
defendant?"  He replied, "When he was first brought downstairs with Terry Dillard."

## VII.

Finally, Armstrong contends that he did not obstruct justice, under U.S.S.G. § 3C1.1, because his false testimony at the suppression hearing was not willful or material. He also maintains the District Court's findings were inadequate. But the District Court specifically ruled upon Armstrong's only challenge to the enhancement: materiality. Armstrong's testimony was material because he sought suppression of his statement on the ground that he was not warned of his rights. Yet the record shows that he was read his rights and given a written list of his rights with the waiver form. The waiver form contains Armstrong's signature in two places and his initials in several places. Again, we see no error.

## VIII.

For the reasons outlined, we will affirm the judgment of conviction and sentence.

---

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
Chief Judge

8